FILED'08 FEB 08 10:37USDC-ORM

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

ROBERT TICE,                                                     Civil No. 06-1706-CL

       Plaintiff,                                        REPORT AND RECOMMENDATION

       v.

MICHAEL J. ASTRUE,
Commissioner, Social Security Commission,

       Defendant.


CLARKE, Magistrate Judge.

Plaintiff Robert Rice brings this action pursuant to section 205(g) of the Social

Security Act, as amended (Act), 42 U.S.C. §§ 405(g) and 1383(c)(3), to obtain judicial

review of the Commissioner's final decision denying plaintiff's application for supplemental

security income benefits.  For the several reasons set forth below, the decision of the

Commissioner should be reversed and remanded for further administrative proceedings.

## BACKGROUND

Plaintiff applied for supplemental security income alleging disability commencing

January 1, 1993.  His applications were denied.  Plaintiff requested a hearing, which was

held before an Administrative Law Judge (ALJ) on July 19, 2006.  Plaintiff, represented by

counsel, appeared and testified, as did a lay witness and a vocational expert .  The ALJ

rendered an adverse decision, and the Appeals Council denied plaintiff's request for review.

At the time of the ALJ's decision, plaintiff was forty-eight years old.  Plaintiff

completed the eleventh grade but has not earned a GED, and he has had training and

schooling in the Job Corp but he did not graduate.  He has relevant past work experience

as a parking garage flagger and parking lot attendant.  Plaintiff alleges disability as of

January 1, 1993, based upon depression (Tr. 28, 76, 91-96, 120, 287, 290); learning

disorder (Tr. 24, 116, 287, 290); history of alcoholism (Tr. 28, 287, 290); anxiety,

confusion, memory loss, lack of concentration and attention span (Tr. 28, 80, 91, 95-96,

290, 983-84, 986); back pain (Tr. 24, 28, 52, 72, 76, 116, 287, 291, 985, 988); liver

problems (Tr. 24, 28, 52, 116, 291, 986); leg /ankle post-fracture (Tr. 119, 981-82, 988).

The relevant medical evidence is discussed below.

## **STANDARDS**

This court must affirm the Commissioner's decision if it is based on the proper legal

standards and the findings are supported by substantial evidence in the record.  Hammock

v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989).  Substantial evidence is "more than a mere

scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate

to support a conclusion."  Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting

Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)).  The court considers the

record as a whole, and  weighs "both the evidence that supports and detracts from the

[Commissioner's] conclusion." <u>Martinez v. Heckler</u>, 807 F.2d 771, 772 (9th Cir. 1986). Where the evidence is susceptible of more than one rational interpretation, the Commissioner's conclusion must be upheld. <u>Sample v. Schweiker</u>, 694 F.2d 639, 642 (9th Cir. 1982). Questions of credibility and resolution of conflicts in the testimony are functions solely of the Commissioner, <u>Waters v. Gardner</u>, 452 F.2d 855, 858 n.7 (9th Cir. 1971), but any negative credibility findings must be supported by findings on the record and supported by substantial evidence, <u>Ceguerra v. Secretary of Health & Human Servs.</u>, 933 F.2d 735, 738 (9th Cir. 1991). The findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive. 42 U.S.C. § 405(g). However, even where findings are supported by substantial evidence, "the decision should be set aside if the proper legal standards were not applied in weighing the evidence and making the decision." <u>Flake v. Gardner</u>, 399 F.2d 532, 540 (9th Cir. 1968); <u>see also</u> <u>Allen v. Heckler</u>, 749 F.2d 577, 579 (9th Cir. 1984). Under sentence four of 42 U.S.C. § 405(g), the court has the power to enter, upon the pleadings and transcript record, a judgment affirming, modifying, or reversing the decision of the Commissioner, with or without remanding the cause for a rehearing.

## COMMISSIONER'S DECISION

The initial burden of proof rests upon the claimant to establish disability. <u>Howard v. Heckler</u>, 782 F.2d 1484, 1486 (9th Cir. 1986). To meet this burden, a claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in

death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . . ."  42 U.S.C. § 423(d)(1)(A).

A five-step sequential process exists for determining whether a person is disabled. Bowen v. Yuckert, 482 U.S. 137, 140 (1987); 20 C.F.R. §§ 404.1520, 416.920.

In step one, the Commissioner determines whether a claimant is engaged in "substantial gainful activity."   Yuckert, 482 U.S. at 140; 20 C.F.R. §§ 404.1520(b), 416.920(b).   In the present case, the ALJ found that plaintiff had not engaged in substantial gainful activity during the period under review.  (Tr. 13, 16.)

In step two, the Commissioner determines whether the claimant has a "medically severe impairment or combination of impairments."  If the Commissioner finds in the negative, the claimant is deemed not disabled.  If the Commissioner finds a severe impairment or combination thereof, the inquiry moves to step three.  Yuckert, 482 U.S. at 140-41; 20 C.F.R. §§ 404.1520(c), 416.920(c).  In the instant case, the ALJ found that plaintiff's recent history of right ankle fracture status post surgical repair, an affective disorder, and alcohol dependence are severe impairments.  (Tr. 14.)  Accordingly, the inquiry moved to step three.

In step three, the analysis focuses on whether the impairment or combination of impairments meets or equals "one of a number of listed impairments that the [Commissioner] acknowledges are so severe as to preclude substantial gainful activity." Yuckert, 482 U.S. at 140-41; see 20 C.F.R. §§ 404.1520(d), 416.920(d).  If so, the claimant is conclusively presumed disabled; if not, the analysis proceeds to step four.  Yuckert, 482

U.S. at 141.  In this case, the ALJ found that plaintiff's  impairments were not severe enough to meet or medically equal any of the listed impairments.  (Tr. 14, 16.)

In step four, the Commissioner determines whether the claimant can still perform his "past relevant work."  If the claimant is so able, then the Commissioner finds the claimant "not disabled."  Otherwise, the inquiry advances to step five.  20 C.F.R. §§ 404.1520(e), 416.920(e).  The Commissioner must first identify the claimant's residual functional capacity (RFC), which should reflect the individual's maximum remaining ability to perform sustained work activities in an ordinary work setting for eight hours a day, five days a week.  Social Security Regulation (SSR) 96-8p.  The RFC is based on all relevant evidence in the case record, including the treating physician's medical opinions about what an individual can still do despite impairments.  Id.  In this case, the ALJ found that plaintiff could not perform his past relevant work.[1]  (Tr. 16; see Def. Brief at 4.)  Accordingly, the inquiry moved to step five.

_____

[1]  The ALJ stated in the Findings section of his decision that, "The claimant's [sic] is unable to return to his past relevant work."  (Tr. 16.)  However, in the body of his decision, the ALJ states that, "The vocational expert further testified given his residual functional capacity, as stated above, he was able to return to his past relevant work."  (Tr. 16.)  In his step five analysis, the ALJ stated in pertinent part that, "the Administrative Law Judge finds the claimant retains the capacity to return to her [sic] former employment as and [sic] telemarketer and is able to make an adjustment to substantial gainful activity in jobs which exists in significant number is [sic] the national economy."  (Tr. 16.)   At the hearing, the vocational expert testified that plaintiff could not perform his past work as a flagger and "maybe" could perform the work of a parking lot attendant.  (Tr. 1003-04.)  It appears that the ALJ's statements in the body of his decision were in error and it seems clear that the ALJ found that plaintiff could not perform his past relevant work, and moved to the step five analysis.

5 - REPORT AND RECOMMENDATION

In step five, the burden is on the Commissioner to establish that the claimant is capable of performing other work that exists in the national economy. <u>Yuckert</u>, 482 U.S. at 141-42; 20 C.F.R. §§ 404.1520(f), 416.920(f). If the Commissioner fails to meet this burden, then the claimant is deemed disabled. Here, the ALJ found that plaintiff retained the residual functional capacity to perform substantial gainful activity which exists in significant numbers in the national economy. (Tr. 16.) Therefore, the ALJ found that plaintiff was not under a disability. (Tr. 16.)

## DISCUSSION

Plaintiff asserts that the ALJ's decision should be reversed because it is unsupported by substantial evidence and because it is based on improper legal standards. Plaintiff argues that the ALJ erred by: (1) improperly rejecting and failing to consider plaintiff's other medically determined impairments; (2) failing to consider the combined effect of his impairments on plaintiff's ability to work; (3) failing to fulfill his duty to fully develop the record in light of plaintiff's mental illness; (4) misconstruing the vocational experts's testimony in the decision; (5) improperly dismissing plaintiff's testimony; and (6) posing a hypothetical to the vocational expert that did not reflect plaintiff's limitations.

**Development of the record**

The Court will first address plaintiff's contention regarding the ALJ's failure to develop the record. Plaintiff contends that his mental impairments consist of a learning disorder in addition to major depression. He contends that the record is ambiguous and

the ALJ failed to fully develop the record in light of these mental impairments.  Defendant does not address this argument.

Prior to making a decision, the ALJ is required to develop a claimant's medical history for at least the twelve months preceding the claim.  20 C.F.R. § 404.1512(d) (2003).  In the Ninth Circuit, the ALJ has an "independent '"duty to fully and fairly develop the record and to assure that the claimant's interests are considered."'"  Tonapetyan v. Halter, 242 F.3d 1144, 1150 (9th Cir. 2001) (quoting Smolen v. Chater, 80 F.3d 1273, 1288 (9th Cir. 1996)).  Ordinarily, the ALJ may discharge this duty in several ways, including: "subpoenaing the claimant's physicians, submitting questions to the claimant's physicians, continuing the hearing, or keeping the record open after the hearing to allow supplementation of the record."  Tonapetyan, 242 F.3d at 1150 (citations omitted).  The duty to further develop the record is triggered "only when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence."  Mayes v. Massanari, 276 F.3d 453, 459-60 (9th Cir. 2001) (citing Tonapetyan, 242 F.3d at 1150); Thomas v. Barnhart, 278 F.3d 947, 958 (9th Cir. 2002) (requirement for additional information "is triggered only when the evidence from the treating medical source is inadequate to make a determination as to the claimant's disability.").  Such a duty exists even where the claimant is represented by counsel.  Brown v. Heckler, 713 F.2d 441, 443 (9th Cir. 1983).  Also, the ALJ's duty is heightened where the claimant may be mentally ill. Tonapetyan, 242 F.3d at 1150.

A review of the record before the ALJ shows that, with regard to plaintiff's mental health issues, the record was ambiguous and was not adequate to enable the ALJ to make a determination as to disability with regard to plaintiff's mental impairments.  Throughout the record, medical providers who treated and examined plaintiff diagnosed him with major depression, recurring.  On September 1, 2004, plaintiff was admitted to Providence St. Vincent Medical Center with a diagnosis of adjustment disorder with mixed emotional features, rule out major depression, and alcohol dependence severe.  His GAF was assessed at 40.[2]  (Tr. 153, 156.)  Hospital course notes state that, following detoxification, "there was a history of recurrent depressive episodes associated with drinking at times," and he was started on an antidepressant.  (Tr. 154.)   Upon discharge on September 8, 2004, plaintiff was diagnosed with major depression, recurrent, and alcohol dependence severe.  His GAF was assessed at 75.[3]  (Tr. 153.)  An October 7, 2004, emergency report of Providence noted a history of depression with four prior suicide attempts.  Depression was diagnosed.  (Tr. 158-59.)  Clackamas County Mental Health Forms dated September

_____

[2]    A GAF of 31 to 40 means:  **"Some impairment in reality testing or communication** (e.g., speech is at times illogical, obscure, or irrelevant) **OR major impairment in several areas, such as work or school, family relations, judgment, thinking, or mood** (e.g., depressed man avoids friends, neglects family, and is unable to work; child frequently beats up younger children, is defiant at home, and is failing at school)." American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders (4th Ed. 1994) at 32.

[3]    A GAF of 71 to 80 means:  **"If symptoms are present, they are transient and expectable reactions to psychosocial stressors** (e.g., difficulty concentrating after family argument); **no more than slight impairment in social, occupational, or school functioning** (e.g., temporarily falling behind in schoolwork)." American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders (4th Ed. 1994) at 32.

13, 2004, through March 24, 2005, note "Maj Depress D/O Recurr Unspeci" with a "Beg Date" of September 13, 2004.  (Tr. 193, 248, 263, 276; see 234-35.)

Cheryl S. Brischetto, Ph.D., conducted an intellectual assessment of plaintiff in December 2004.   Upon examination, Dr. Brischetto assessed a learning disorder, provisional, and specifically recommended that further testing be done with a more extensive instrument.  She further noted that plaintiff's performance on the exam may have been affected by his depression.  Dr. Brischetto diagnosed plaintiff with  major depressive disorder, recurrent, moderate to severe; provisional:  learning disorder NOS; alcohol dependence; and rule out cognitive disorder NOS.  She assessed a GAF of 50.[4]  (Tr. 160-67.)

A state agency physician, Peter LeBray, Ph.D., filled out a Psychiatric Review Technique Form in January 2005.  He included the following medically determinable impairments:  learning disorder v. cognitive disorder (rule out); depression v. adjustment disorder; and chronic alcohol dependence.  (Tr. 172-85.)

The ALJ does not discuss Dr. Brischetto's assessment nor does he refer to Dr. LeBray's psychiatric review in his decision.  Neither the diagnosis of depression nor the diagnosis of a learning disability is mentioned by the ALJ in his decision, although he discusses plaintiff's hospitalizations in October 2004 for suicidal ideation.  The ALJ refers

---

[4]  A GAF of 41 to 50 means:  "**Serious symptoms** (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) **OR any serious impairment in social, occupational, or school functioning** (e.g., no friends, unable to keep a job)."  American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders (4th Ed. 1994) at 32.

to the diagnosis of adjustment disorder on admission to Providence in September 2004 but not to the diagnosis of major depression upon discharge.  It is noteworthy that the ALJ found plaintiff to have a severe impairment of "affective disorder," but this impairment, per se, is not mentioned by any of plaintiff's treating or examining physicians, or nonexamining physicians.  The ALJ did not call a psychiatric expert to review the record and testify at the hearing regarding plaintiff's mental impairments.

In light of Dr. Brischetto's diagnosis of learning disorder, provisional, and her recommendation that further testing be done, it was incumbent that the record be developed in this regard.  See Tonapetyan, 242 F.3d at 1150-51.  Further, at the time of plaintiff's hearing in July 2006, there had been no mental evaluation of plaintiff since Dr. Brischetto's evaluation in December 2004 and, as noted above, that assessment was not mentioned by the ALJ.  Treating and examining physicians had diagnosed plaintiff with recurring major depression, and plaintiff had been assessed with GAF scores ranging from 40 to 75 and then 50 within a four-month period.

The Ninth Circuit has determined that, "One of the means available to an ALJ to supplement an inadequate medical record is to order a consultative examination, *i.e.*, 'a physical or mental examination or test purchased for [a claimant] at [the Social Security Administration's] request and expense.'"  Reed v. Massanari, 270 F.3d. 838, 841 (9th Cir. 2001) (citing 20 C.F.R. §§ 404.1519, 416.919).  Given the posture of this case, it is appropriate that a consultative psychological examination be ordered as to plaintiff's depression, and claimed anxiety and lack of concentration, and that further testing be

ordered as to whether plaintiff has a learning disorder, so as to determine the nature and extent of any limitations relating to either or both of these mental health impairments, and the impact of these limitations on plaintiff's ability to work.

Further, it is unclear whether certain treatment records were considered by the ALJ or the Appeals Council. The administrative record before the Court includes exhibits 11F through 14F, pages 774 through 852, covering the period May 2005 through March 15, 2006. However, at the hearing, the ALJ referred to exhibits through 10F, page 773, only. (Tr. 979.) The additional records include Clackamas County Mental Health records dated May and August 2005 which indicate a diagnosis of "Maj Depress D/O Recurr Un" with a "Begin Date" of September 13, 2004. (Tr. 918, 921, 933.) The records indicate that plaintiff was in treatment for depression at least as early as January 2006 (Tr. 940), with follow-up office visits for depression through at least March 14, 2006, when the records end.[5] (Tr. 949, 962, 972, 974.) It is unclear whether the ALJ had knowledge of this information, since there was no indication at the July 2006 hearing that plaintiff was in treatment for either alcohol dependence or depression during this period.

**Role of alcohol dependence**

Plaintiff contends that the ALJ erred in finding that plaintiff's alcoholism was material to his disability prior to conducting the five step inquiry. Defendant argues that the double application of the five step sequence was not necessary because plaintiff was not disabled when considering alcohol along with other impairments.

---

[5]   These records also indicate that plaintiff had follow-up visits for depression in February of 2005. (Tr. 974.)

11 - REPORT AND RECOMMENDATION

The regulations provide that, if a claimant is found disabled and there is medical evidence of drug addiction or alcoholism, the Commissioner must determine whether the claimant's drug addiction or alcoholism is a contributing factor material to the determination of disability.  20 C.F.R. §§ 404.1535(a), 416.935(a).  The Ninth Circuit in <u>Bustamante v. Massanari</u>, 262 F.3d 949, 954-55 (9th Cir. 2001), determined that the implementing regulations begin with the conditional language, "If we find that you are disabled" and, therefore, an ALJ should not proceed with the analysis if the ALJ has not yet found the claimant to be disabled under the five-step inquiry.  (Citing <u>Drapeau v. Massanari</u>, 255 F.3d 1211, 1213 (10th Cir. 2001) (finding of disability is a "condition precedent" to application of 42 U.S.C. § 423(d)(2)(c)).)  The <u>Bustamante</u> court found that the ALJ had erred there by concluding that plaintiff's medical conditions were the product and consequence of his alcohol abuse and not an independently severe or disabling impairment.  The court stated: "If, and only if, the ALJ found that Bustamante was disabled under the five-step inquiry, should the ALJ have evaluated whether Bustamante would still be disabled if he stopped using alcohol."  <u>Bustamante</u>, 262 F.3d at 955 &  n.1.

Here, while the ALJ did not directly state in his decision that plaintiff's alcohol  use was a contributing factor material to the disability determination, his discussion of the medical evidence focuses almost entirely on plaintiff's alcohol use and its effects.  The ALJ's conclusion alone indicates that plaintiff's alcohol use was the determining factor in the finding that plaintiff was not disabled:

> What  these records do indicate is that the claimant has chosen the life-style
> of an individual who prefers to consume alcohol instead of working.  His

earnings over the past fifteen years leave much to be desired.  Such lack of
work activity and earnings have nothing to do with his alleged disability, but
are the result of his lack of interest in work and his pursuit of alcohol.  It
appears the claimant has exhausted all of his usual support for obtaining
alcohol and now has deicide [sic] to pursue a course of action that would
allow the Government to pick up the tab for his alcohol consumption.

(Tr. 14.)

Upon remand, the ALJ shall conduct the five-step inquiry including all of plaintiff's

severe impairments, and the determination of whether plaintiff's use of alcohol is a

contributing factor material to a determination of disability shall be done only if it is first

determined that plaintiff is disabled.  20 C.F.R. §§ 404.1535(a), 416.935(a);  Bustamante,

262 F.3d 949.

**Severity of impairments**

Plaintiff contends that  the ALJ failed to consider other medically determined

impairments, such as gastritis and suicidal ideation among others, as severe impairments.

He contends that his many conditions resulted in chronic pain and an appearance of being

"chronically ill," (Tr. 156).  He further contends that the ALJ did not consider the combined

effects of his impairments.  Defendant does not specifically address these arguments.

The regulations provide in pertinent part that, "If you do not have any impairment

or combination of impairments which significantly limits your physical or mental ability to

do basic work activities, we will find that you do not have a severe impairment and are,

therefore, not disabled."  20 C.F.R. §§ 404.1520(c), 416.920(c).  The regulations further

provide that, "An impairment or combination of impairments is not severe if it does not

significantly limit your physical or mental ability to do basic work activities."  20 C.F.R. §§

13 - REPORT AND RECOMMENDATION

404.1521(a), 416.921(a).  The Ninth Circuit in <u>Yuckert v. Bowen</u>, 841 F.2d 303, 306 (9th

Cir. 1988), noted that a narrow construction has been imposed upon the severity

regulation.  The <u>Yuckert</u> court determined that the severity regulation must be applied in

light of the 1968 regulation which described non-severe impairment as, "'a slight neurosis,

slight impairment of sight or hearing, or other slight abnormality or combination of

abnormalities,'" (citing 20 C.F.R. § 404.1520(a) (1968)), and Social Security Ruling 85-28

which states that, "'an impairment is found not severe . . . when medical evidence

establishes only a slight abnormality or a combination of slight abnormalities which would

have *no more than a minimal effect* on an individual's ability to work,'" (citing SSR 85-28).

<u>Yuckert</u>, 841 F.2d at 306.

Here, the ALJ stated that, "An impairment is severe within the meaning of the

regulations if it imposes significant restrictions on the ability to perform basic work

activities." (Tr. 13.)  The ALJ determined  that plaintiff's allegations of back pain and

hepatitis C / liver problems were not severe impairments.  (Tr. 13, 14.)  As to the

impairments of depression and learning disorder, which plaintiff alleged as bases for

disability, as discussed above, these impairments are not discussed by the ALJ.  Nor were

plaintiff's allegations of anxiety, confusion, memory loss, lack of concentration and

attention span considered by the ALJ as possible severe impairments.  The <u>Yuckert</u> court

held that, where the ALJ required the claimant to show that her impairments "significantly

limited" her ability to work and the record did not indicate that the ALJ considered the 1968

regulation, the ALJ had misapplied the severity regulation to the claim before him "because

he did not consider the 1968 regulation." Id. at 306-07. The same appears to be true here. The step-two inquiry is "'a de minimis screening device to dispose of groundless claims.'" Edlund v. Massanari, 253 F.3d 1152, 1158 (9th Cir. 2001).

The Court notes that the physical limitations included by the ALJ in plaintiff's residual functional capacity–the abilities to lift twenty pounds occasionally and ten pounds frequently, and to occasionally climb, stoop, kneel, crouch, and crawl–appear to be based on the exertional limitations found by a state agency physician in December 2004. (Tr. 282-89.) The ALJ does not discuss this physical residual functional capacity assessment in his decision. It is noteworthy, however, that, although the ALJ did not find that plaintiff's back pain was a severe impairment, the limitations in the assessment are based on a diagnosis of "LBP," (Tr. 282), and "evidence of long standing LBP without radiculopathy," (Tr. 283, 287). The ALJ's citation to the medical evidence as to plaintiff's low back pain is incomplete. The ALJ noted that, in January 1999, plaintiff was able to heel and toe walk without difficulty and was able to squat and rise without difficulty, with normal diagnostic studies. (Tr. 13.) However, the clinic notes go on to state that, "He has very limited range of motion. Extension seems to make his back pain worse. Flexion is better for him but he is limited in both directions." (Tr. 134.) The ALJ noted that in May 2001, plaintiff was limited to lifting twenty-five pounds and standing/sitting for two hours at a time. (Tr. 13.) The complete progress note states that, "Pt doing community service & has 15 yr h/o low back pain & cannot do bending, twisting, heavy lifting or long periods of sitting or standing-not written (copy for chart) with 25# lift limit and 2 hr sitting/standing." (Tr. 126.) The

record also indicates the plaintiff was prescribed pain medication for back pain, which is acknowledged by the non-examining physician.  See Bustamante, 262 F.3d at 955-56 (conclusion that claimant's mental impairments not severe unsupported by substantial evidence in light of diagnoses and resulting limitations).  The history of right ankle fracture status post surgical repair, which the ALJ found to be a severe impairment, occurred in June 2005, six months after the physical assessment by the non-examining physician.  (Tr. 292-914.)

Further, it is unclear whether the ALJ considered plaintiff's impairments in combination.  The Ninth Circuit has stated that, "' Important here, at the step two inquiry, is the requirement that the ALJ must consider the combined effect of all of the claimant's impairments on h[is] ability to function, without regard to whether each alone was sufficiently severe.'"  Edlund, 253 F.3d at 1159 (quoting Smolen v. Chater, 80 F.3d 1273, 1290 (9th Cir. 1996); see 42 U.S.C. § 423(d)(2)(B); 20 C.F.R. §§ 404.1520(c), 416.920(c), 404.1521(a), 416.921(a).  The Court agrees with defendant that no "magic words" are required, but other than a statement that he should consider whether the claimant has a severe impairment or combination of impairments, the ALJ makes no reference to whether any of plaintiff's impairments were considered in combination, but refers only to "impairments" in his decision.

On remand, once the consultative examination is done, plaintiff's impairments should be considered singly under the severity regulation, and the ALJ must also consider plaintiff's impairments in combination as required under social security law.

**Plaintiff's credibility**

Plaintiff contends that the ALJ improperly dismissed his testimony as to his liver complaint, his mental complaints, and pain complaints relating to his back. Defendant contends that the ALJ used ordinary methods of credibility assessment.

In rejecting a claimant's testimony, the Commissioner must perform a two stage analysis. Smolen v Chater, 80 F.3d 1273, 1281 (9th Cir. 1996). The first stage is the Cotton test. Cotton, 799 F.2d 1403. Under this test a claimant must produce objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged. All that is required of the claimant is that he produce objective evidence of an impairment or impairments and show that the impairment or impairments could produce some degree of the symptoms alleged. In addition, there must be no evidence of malingering.

Plaintiff has produced objective evidence of impairments that could reasonably be expected to produce some degree of symptoms resulting in limitations. (Tr. 16, 21.) The ALJ did not find that plaintiff is malingering. Therefore, the analysis moves to a credibility determination.

Under the second part of the analysis, the Commissioner must analyze the credibility of a claimant's testimony regarding the severity of claimant's symptoms. The Commissioner can reject a claimant's symptom testimony only if she makes specific findings, stating clear and convincing reasons for doing so. Dodrill v. Shalala, 12 F.3d 915, 918 (9th Cir. 1993); Smolen, 80 F.3d at 1281-82. General findings are insufficient; rather,

the ALJ must identify what testimony is not credible, and what evidence suggests that the

testimony is not credible.  <u>Reddick v. Chater</u>, 157 F.3d 715, 722 (9th Cir. 1998).  The

Commissioner cannot reject a claimant's symptom testimony solely because it is not fully

corroborated by objective medical findings.  <u>Cotton</u>, 799 F.2d 1403.

> In determining a claimant's credibility the Commissioner may consider, for example:
>
> (1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities. . . . In evaluating the credibility of the symptom testimony, the ALJ must also consider the factors set out in SSR 88-13. . . .  Those factors include the claimant's work record and observations of treating and examining physicians and other third parties regarding, among other matters, the nature, onset, duration, and frequency of the claimant's symptoms; precipitating and aggravating factors; functional restrictions caused by the symptoms; and the claimant's daily activities.

<u>Smolen</u>, 80 F.3d at 1284.

Here, the ALJ found that plaintiff's testimony was generally credible to the extent

that he has impairments that cause limitations, but not to the extent that he is precluded

from all work activities.  He found that a review of the records failed to support plaintiff's

allegations and testimony of debilitating back pain and liver dysfunction.[6]  The ALJ found

that plaintiff had been less than fully credible when testifying at the hearing.  The ALJ

made this finding based on plaintiff's denial that his suicidal ideation was a result of his

drinking, contrary to what he had told examining physicians at Providence; and because

---

[6]  The ALJ found that neither of these impairments was a severe impairment. (Tr. 14.)

18 - REPORT AND RECOMMENDATION

he "denied his feelings of anxiousness, inability to handle criticism and to remain focused was due to his alcohol abuse, even though such is noted in the records." (Tr. 15.)

Providence records show that, on October 7, 2004, when plaintiff presented to the emergency department complaining of suicidal ideation, "he states he always becomes suicidal when he begins to drink." (Tr. 158.) However, it is less clear that the ALJ's finding that plaintiff attributed feelings of anxiousness, inability to handle criticism, and to remain focused to his use of alcohol, is supported by the record. Dr. LeBray indicated "Moderate" limitation in "Difficulties in Maintaining Concentration, Persistence, and Pace," relating to all medically determinable impairments found by him: learning disorder v. cognitive disorder (rule out); depression v. adjustment disorder; and chronic alcohol dependence. (Tr. 172-85.) Dr. Brischetto found in December 2004 that plaintiff's depression, which she found to be a major depressive disorder, moderate to severe, "may be impacting his memory some." (Tr. 166-67.) Thus, it is not at all clear that, at least as to any problem with plaintiff's concentration, it is due to plaintiff's use of alcohol.

Defendant contends that the ALJ may use ordinary methods of credibility assessment and the ALJ noted self sufficient daily activities, successful medication usage, and the salutary effect of ceasing alcohol abuse. Even if stated by the ALJ in his decision, however, none of these reasons are linked to the ALJ's reasons for not fully crediting plaintiff's testimony in this case.

On this record, the Court finds that the ALJ did not provide specific, and clear and convincing reasons for finding that plaintiff's allegations and testimony were not entirely

credible.  On remand, if the ALJ discounts plaintiff's allegations and testimony, he shall provide specific, and clear and convincing reasons for doing so.

**Vocational testimony**

Plaintiff contends that the hypothetical posed to the vocational expert did not reflect his limitations.  He contends that the hypothetical did not include mental impairments, his subjective complaints, or the combined effect of all of his impairments.  Defendant does not specifically address this argument, but only argues that the limitations are supported by substantial evidence.

An ALJ may rely on the testimony of a vocational expert that is elicited with a hypothetical question that sets forth all the limitations of the claimant.  Andrews v. Shalala, 53 F.3d 1035, 1043 (9th Cir. 1995).  The assumptions in the hypothetical question must be supported by substantial evidence.  Id.  The ALJ may not incorporate limitations or restrictions that are not supported by the record.  SSR 96-8p.  A hypothetical which fails to include all of a claimant's limitations does not constitute substantial evidence. Magallanes v. Bowen, 881 F.2d 747, 756 (9th Cir. 1989).

As the Court has found, the ALJ did not consider plaintiff's major depression, recurring, which is established in the record, nor the learning order impairment.  Dr. Brischetto opined that plaintiff's depression may be affecting his memory some.   Any limitations due to these impairments were not included by the ALJ in the hypothetical posed to the vocational expert.  Also, the Court has found that there is some confusion in the record relating to plaintiff's back pain since, although the ALJ did not consider plaintiff's

back pain to be a severe impairment, he included restrictions relating to plaintiff's back condition in his residual functional capacity.  The Court has also found that it is unclear whether the ALJ considered plaintiff's impairments in combination.

Accordingly, on remand, the ALJ must insure that any hypothetical question to a vocational expert reflects all of plaintiff's limitations and restrictions.  Osenbrock v. Apfel, 240 F.3d 1157, 1163 (9th Cir. 2001).

**Conclusion**

In his decision, the ALJ appears to have overly focused on plaintiff's alcohol use to the exclusion of plaintiff's mental health issues of depression and anxiety, lack of concentration and memory, and learning disorder.  Despite repeated diagnoses of major depression, recurring, in the record, that impairment was not discussed by the ALJ and was recast as an affective disorder.  The ALJ's statements that plaintiff has made no effort to stop drinking is not supported by recent medical reports in the record, and his conclusion that plaintiff prefers to consume alcohol instead of working and that he is now pursuing a course of action which would allow the Government to pick up the tab for his alcohol consumption is insensitive.  Plaintiff is entitled to a complete and thoughtful analysis of his claims.

This matter should, therefore, be remanded for further administrative proceedings, as indicated in the opinion.

//

//

## RECOMMENDATION

Based on the foregoing, and pursuant to sentence four of 42 U.S.C. § 405(g), it is recommended that the decision of the Commissioner be reversed and the matter remanded for further administrative proceedings, and that judgment be entered accordingly.

*This recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals.* Any notice of appeal pursuant to Rule 4(a)(1), Federal Rules of Appellate Procedure, should not be filed until entry of the district court's judgment or appealable order. *Objections to this Report and Recommendation, if any, are due by February 22, 2008. If objections are filed, any responses to the objections are due 14 days after the objections are filed.* Failure to timely file objections to any factual determinations of the Magistrate Judge will be considered a waiver of a party's right to de novo consideration of the factual issues and will constitute a waiver of a party's right to appellate review of the findings of fact in an order or judgment entered pursuant to the Magistrate Judge's recommendation.

DATED this _____ day of February, 2008.

_____
MARK D. CLARKE
United States Magistrate Judge